## Rydzewski v. City of Erie

*George M. Schroeck,* for plaintiff.
*Gerald Villella,* for defendant City of Erie.
*Gery Nietupski,* for defendants Louis J. Tullio, Patricia Liebel, Dennis DelPorto and James P. Ragen.

BOZZA, *A.J.,* April 19, 1990 — This matter comes before the court upon the preliminary objections to plaintiff's complaint filed by the defendant, City of Erie, and the individual defendants, Louis J. Tullio, Patricia Liebel, Dennis DelPorto and James P. Ragen, respectively. Defendant, City of Erie, and the individual defendants have filed preliminary objections in the nature of a demurrer to count I of the complaint and a demurrer or a motion for more specific pleading as to count II of the complaint. The individual defendants have also filed a preliminary objection in the nature of a demurrer or motion to strike as to all counts set forth in plaintiff's complaint.

This case arose out of the alleged wrongful discharge of plaintiff, Norbert Rydzewski, from his employment as Chief Plumbing Inspector for the City of Erie. On August 31, 1989, defendant Dennis DelPorto, the planning director of the City of Erie and Rydzewski's immediate supervisor, directed Rydzewski to inspect the plumbing in the newly constructed football locker room facilities at Mercyhurst College. Rydzewski informed DelPorto that he

had previously inspected the locker facilities on three different occasions and found that the plumbing was not in compliance with the Plumbing Code of the City of Erie since the work was not completed by a master plumber and he was unable to survey any other violations because the plumbing had already been covered. DelPorto then told Rydzewski that he would have to take a different approach toward Mercyhurst and again ordered Rydzewski to proceed to Mercyhurst to inspect the plumbing. Rydzewski again refused to complete his assignment while reiterating to DelPorto the fact that he could not approve the project based upon his previous inspections.

Rydzewski and DelPorto then proceeded to the office of defendant Patricia Liebel, the city administrator, where Rydzewski apprised Liebel and defendant James Ragen, the director of personnel, of the situation at Mercyhurst. DelPorto then ordered Rydzewski to carry out his assigned task of inspection in the presence of Liebel and Ragen, and Rydzewski again declined to proceed while voicing his position that his previous inspections were sufficient. DelPorto then informed Rydzewski that he was terminated effective immediately for gross insubordination and on September 5, 1989, Rydzewski was formally terminated by Mayor Louis J. Tullio.

Rydzewski filed a complaint setting forth two counts against his former employer and against the aforementioned employees of the city involved in plaintiff's termination. The first count of plaintiff's complaint alleges that plaintiff was wrongfully discharged and alleges further that his termination was violative of a public policy of the Commonwealth of Pennsylvania. In count II, plaintiff avers that he has been defamed as the result of the

alleged false impressions arising from the publicity surrounding his discharge. In addition, plaintiff sets forth a deprivation of procedural due process in that he was not provided a hearing prior to his discharge.

Plaintiff, Norbert Rydzewski, worked as an at-will employee for the City of Erie as the chief plumbing inspector. The well settled rule in this commonwealth is that: "absent a statutory or contractual provision to the contrary, the law has taken for granted the power of either party to terminate an employment relationship for any or no reason." *Geary v. United States Steel Corporation,* 456 Pa. 171, 175, 319 A.2d 174, 176 (1974); *Betts v. Stroehmann Brothers,* 355 Pa. Super. 195, 512 A.2d 1289 (1986); *Banas v. Mathews International Corporation,* 348 Pa. Super. 464, 502 A.2d 637 (1985). The at-will presumption, uniquely present in employment contracts, is that an employment agreement is presumptively terminable at-will by either party; meaning, an employee may leave a job for any or no reason and an employer may discharge an employee for any or no reason. *Greene v. Oliver Realty Inc.,* 350 Pa. Super. 183, 504 A.2d 306 (1986).

Plaintiff has attempted to circumvent this general rule by invoking a public-policy exception. Rydzewski contends that his action was not insubordinate but rather a response to what he considered to be an unlawful order. It is the law in this commonwealth that, "when the discharge of an employee-at-will threatens public policy, the employee may have a cause of action against the employer for wrongful discharge." *Yaindl v. Ingersoll-Rand Co.,* 218 Pa. Super. 560, 422 A.2d 611 (1980). However, this exception is narrow and should be viewed within the context of the employer's right to run his business as he sees fit. *Martin v. Capital Cities Inc.,* 354 Pa. Super. 199, 222, 511 A.2d 830, 842 (1986);

*Turner v. Letterkenny Federal Credit Union,* 351 Pa. Super. 51, 55, 505 A.2d 259, 261 (1985); *Yaindl,* 281 Pa. Super. at 577, 422 A.2d at 610. The employee must show that there has been a "violation of a clearly mandated public policy which 'strikes at the heart of a citizen's social right, duties, and responsibilities.' " *Turner,* 351 Pa. Super. at 55, 505 A.2d at 261, quoting *Novosel v. Nationwide Ins. Co.,* 721 F.2d 894, 899 (3d Cir. 1983).

It is evident that where the public policy claimed to be violated is not clear, a cause of action for wrongful discharge has not been recognized. In *Geary, supra,* a former salesman for U.S. Steel commenced an action for his alleged wrongful discharge in apparent retaliation for his apprising his supervisors of what he considered to be the unsafe nature of tubular products being placed in the market. Geary attempted to circumvent the general at-will principle by asserting that he was acting in the best interests of public policy as well as of his employer in opposing the sale of a product that he considered defective. The court found that the fact that Geary's motives were commendable did not detract from the company's recognized interest in preserving the efficiency of its normal operational procedures which were subverted by Geary's actions in by-passing his immediate supervisors and pressing his views on higher officers. The *Geary* court found that there was a legitimate reason for the termination of employment and no clear mandate of public policy was violated.

In *Callahan v. Scott Paper Co.,* 541 F.Supp. 550 (E.D. Pa. 1987), the plaintiffs alleged that they were discharged by Scott in retaliation for their objection to and efforts to eliminate the illegal price discounts and promotional allowances which Scott extended to certain favored customers. The *Callahan* court,

despite denoting the efforts of the plaintiffs as "praiseworthy" in redirecting what they perceived to be illegal activity in the antitrust field by Scott, concluded that "the employer's interest was paramount where the employee objected to pricing decisions of his employer on the ground that they cause harm to competition." 541 F.Supp. at 563.

Likewise, in *Yaindl, supra,* an employee's discharge for bringing to the company's attention defects in the manufacturing of pumps for an overseas company was held not to constitute a contravention of any stated public policy. A claim that the pumps presented a safety hazard was unsubstantiated and there was no indication that the company attempted to hide the defects in the pumps, or deny its responsibility.

There have been instances where the courts have found sufficient public policy interests to be violated by termination of an at-will employee. Relying on *Geary,* the Superior Court has held that a public employer may not deny employment on the basis of a conviction for which the offender has been pardoned, unless the conviction was reasonably related to fitness for the job, *Hunter v. Port Authority of Allegheny County,* 277 Pa. Super. 4, 419 A.2d 631 (1980), and that an employer may not discharge an employee because he accepts jury service, *Reuther v. Fowler & Williams Inc.,* 255 Pa. Super. 28, 386 A.2d 119 (1978).

In the instant case, Rydzewski contends that he interpreted DelPorto's statement that a different approach would have to be taken toward Mercyhurst to signify by implication the intention of his superiors to approve the plumbing regardless of Rydzewski's judgment. Therefore, he avers that his failure to pursue DelPorto's orders was in accordance with the public interest in that he refused an

illegal order. The statement that "a different approach would have to be taken with Mercyhurst" is at worst ambiguous and does not clearly lead to a reasonable inference that Rydzewski's superiors were requesting him to perform an illegal act. In fact, there is nothing in the pleadings to indicate that DelPorto's orders were in any way improper. Rydzewski was simply directed to do and then re-do his job. There was no intimation that he wanted Rydzewski to act contrary to the Plumbing Code. Rydzewski was directed to inspect the locker room facilities and nothing more. Indeed it is entirely reasonable to conclude that Mr. Rydzewski's superiors were simply dissatisfied with his work, or alternatively, that there was something unique about the project that required a deviation from customary practice.

While a professional employee has a dual obligation to follow the law and stay within the bounds of the applicable code of ethics, the employer should not be precluded from exercising its responsibilities where the employee's judgment is unreasonable. *McGonagle v. Union Fidelity Corp.,* 385 Pa. Super. 223, 556 A.2d 878 (1989). The City of Erie should not be prevented from carrying out timely and proper plumbing inspections because an employee has a subjective belief that a request for re-inspection is unlawful. Mr. Rydzewski's' three refusals to re-inspect the Mercyhurst project were acts of insubordination sufficient to justify his dismissal as an at-will employee. Therefore, plaintiff has failed to set forth facts which when accepted as true and viewed in a light most favorable to him, state a cause of action for wrongful discharge.

In count II of plaintiff's complaint, it is averred that Rydzewski was deprived of his right to procedural due process since he was not provided a

hearing at anytime to determine the merits of his dismissal. The Commonwealth Court has held that a property right exists in public employment only where the employee has an enforceable expectation of continued employment which can exist only if the employee, by statute or contract, has been granted some form of guarantee. *Amesbury v. Luzerne County Institution District,* 27 Pa. Commw. 418, 366 A.2d 631 (1976). In this case, Rydzewski concedes that he was an at-will municipal employee with no statutory or contractual basis for continued employment for a definite term. If a person is hired for a government position terminable at the will of his superiors, the employee does not have a property interest in the position which mandates a procedure for determining the basis for his termination. See *Batson v. Montgomery County,* 125 Pa. Commw. 251, 557 A.2d 65 (1989). Rydzewski has failed to set forth sufficient facts to support a "property interest" through an entitlement to continual employment and hence there has been no deprivation of procedural due process by the absence of a hearing prior to his termination.

Finally, plaintiff sets forth a claim for false-light publicity in count II of his complaint. In regard to the invasion of privacy torts, the Restatement (Second) of Torts, §§652B-652E, have provided an outline for their development in Pennsylvania. *Harris by Harris v. Easton Publishing Co.,* 335 Pa. Super. 141, 483 A.2d 1377 (1984). The tort of false-light publicity is described in section 652E of the Restatement in pertinent part:

"One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if

"(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

"(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

This court finds that Rydzewski has failed to set forth sufficient facts that would support a cause of action for false-light publicity. Defendants' only action relating to the dissemination of publicity regarding this matter was a news release communicating the fact that Rydzewski was being relieved of his employment as chief plumbing inspector for gross insubordination in not following the orders of his superiors. The City of Erie did not act knowingly or recklessly in disseminating false impressions regarding the publicity surrounding the termination of Rydzewski's employment. Instead the City of Erie merely acted routinely in the course of the administration of its employee relations in releasing for public notice the accurate grounds for the termination of Rydzewski's employment. This falls far short of an actionable invasion of privacy for false-light publicity.

This court finds that plaintiff has failed to set forth causes of action for wrongful discharge, denial of procedural due process and false-light publicity. Therefore, the respective defendants' demurrers to counts I and II of plaintiff's complaint shall be granted. Such an order shall follow.

## ORDER

And now, April 19, 1990, in accordance with this opinion, this court's order dated January 26, 1990 is hereby affirmed.